Good morning, and may it please the Court. I'm Paul Barnes, my co-counsel is Wilson Minor, we're Special Assistant Attorney Generals for the State of Mississippi. We represent the Official Capacity State Defendants, Dr. Thomas Dobbs and Dr. Kenneth Cleveland. Dr. Dobbs is the Mississippi State Health Officer, Dr. Cleveland is the Executive Director of the Mississippi State Board of Medical Licensure. This underlying litigation in this case, the underlying litigation in this case, has already generated two appeals, and they're both relevant here today. First of all, there was the appeal of HB 1510, also known as the 15-week law, which this court recently addressed. The next year, in 2019, the Mississippi Legislature passed SB 2116, the fetal heartbeat law, which is of course the law at issue here today. I would be remiss if I did not start by addressing the fact that on December 13th, this court ruled against us on our appeal of the 15-week law, the permanent injunction issued by the Supreme Court. Now, briefing in this case was not completed at the time of oral argument on the 15-week law. Well, let me ask you, even before that decision came out in December, you didn't request oral argument in this case. I understand you didn't request it in the other case, even though you sought en banc rehearing in the other case, and even though both of these cases involve a federal judge holding that a state law, democratically enacted state law, is unconstitutional, the Supreme Federal Courts can perform is to hold that a democratically enacted law is unconstitutional. So why isn't the court wanting oral argument? Even before there was this precedent in the book, it just seems odd to me. I don't think I've ever seen a case where the district court held a law unconstitutional in the party, the appellant didn't request oral argument. Your Honor, I'm going to avoid making a bad pun about hindsight, but a lesson learned, Your Honor. As I can say, in hindsight, we probably should have. It certainly would have been a proper course. It's not that just the whole point of this is to get to the Supreme Court, which there's nothing wrong with preserving issues to get to the Supreme Court, that's a litigation tactic. That's not the only reason, Your Honor, because we do think, we disagree that the current state of the law is sufficiently settled to make the constitutionality of these laws completely out of the question. Obviously the complexion of this case changed very dramatically on December 13th when the panel in the 15-week law issued its opinion. Even more significantly, on January 17th, this court denied our position for rehearing en banc. And as acknowledged in our 28J letter, the Jehu 1 decision on the 15-week law does control this panel's resolution of this appeal of the fetal heartbeat law. However, we respectfully disagree with the result of Jehu 1, which is why we've already publicly announced, and Attorney General Fitch has announced, that we will be asking the Supreme Court to review the Jehu 1 decision and seeking reversal. Is there any difference? The case decided in December said you couldn't get an abortion before 15 weeks. This one ties it to when the fetal heartbeat has been detected. You can't get an abortion once the fetal heartbeat can be detected. So it's not specifically a weak limitation, but you don't see any distinction there? I don't see any distinction in the legal principles the panel has to apply. Certainly there are different laws, different triggering mechanisms. As you stated, the 15-week law is triggered by reaching a specific gestational age, 15 weeks. This law, 2116, is triggered only after the detection of a fetal heartbeat. That is not a specific point in pregnancy, like 15 weeks. That is a medical milestone, an objective medical finding that can occur as early as LMP, or after one's last menstrual period. Like the 15-week law, however, this law also furthers legitimate state interest recognized by the Supreme Court. Legitimate state interest in protection of maternal health, in protecting unborn life, in promoting respect for life, and promoting respect for life and regulating the medical profession. Now, you say it's a regulation, not a ban. Our decision in December, different panels said the 15-week law was a ban. You say it's just a regulation as to time and manner. Does that mean Mississippi could pass a law saying you can't get an abortion after four weeks into a pregnancy? Your Honor, I think you would have to look at each law. Legislative enactment, as it is passed, I believe that that's what due process requires. But the most significant point, I think, is that this law is based on different findings. It's based on a completely different set of circumstances. The preliminary injunction of the 15-week law would not have banned the fetal heartbeat law. Did not and would not. The problem that we see that the district court had in refusing to apply the undue burden test is that labels, what I'm trying to get at, is that labels are not controllable, should not be controllable. There's a lot of talk about whether or not we're talking about a regulation or we're talking about a ban. Respectfully, I don't think anybody's ever argued that it's a labeling issue, or at least certainly not what our panel decided. Sorry? It's not an, sorry. I don't, respectfully, I don't think the panel said that it was a labeling issue. I think the issue is, substantively, how is this anything other than a ban? I acknowledge that you disagree with the Supreme Court precedent in this respect, but I'm not aware of any federal judge anywhere in the country who reads Supreme Court precedent the way you're suggesting. Well, I think they read it, I think that applying a categorical test, as the Court did here, implies that labeling, determining that the law is a ban versus a regulation, does have some impact. Often, in these cases, yes, is this a regulation or is it a ban? Well, when I hear regulation as a lawyer, I think of an administrative provision. I think of a law as a statute, a legislative enactment. So we do think that applying a categorical rule like this does, in fact, involve labeling. So we respectfully disagree. The undue burden is here. In your mind, what's an example of a law that would impose an undue burden? Since, I mean, the Casey decision, it clearly contemplates some state regulations of abortion will be permissible, some will go too far. What, in your view, would be a law that would not be permissible? Well, Mississippi's admitting privileges law, which, the effect of which would have been to close the only abortion clinic in the state, that would have imposed an undue burden as this Court held. Our problem with- So does it turn on the effect? I mean, what if there was, I know I didn't get this, but what if there was evidence in a case that, well, banning or prohibiting abortion after 15 weeks would shut down all the clinics because there wouldn't be, you know, so many people don't even realize they're pregnant and can go to an abortion clinic in that time. Would that, if it had that same effect on shutting down clinics, is that the key factor in your view? I don't think that that is totally correct, Your Honor, because I think there are conditions under which a state could have legitimate health and safety regulations of abortion that might have the effect of closing a state's only clinic. So it's not controlling, but that is one situation, that's one case where this Court held that there was an undue burden caused by one of Mississippi's laws. The fundamental problem applying the categorical rule is that it is not just, it is not fair. The categorical rule allows the District Courts to only consider one side of the issue, the interest of a woman seeking to have an abortion. However, there are two sides to the issue. The other side is the state's interest, the state's interest in protecting maternal health, the state's interest in protecting unborn life, and the state's police power to protect the well-being of its citizens does not begin at first. But didn't the Supreme Court explicitly confront this balancing in Casey? I mean, the whole point of Casey, I thought, is after a certain point in time, then you can have that balancing, but before then, it's just an absolute, you cannot have any sort of ban at all. And the whole point of Mississippi law is to basically change the date that the Supreme Court has set for you. I mean, I acknowledge you think the Supreme Court President is wrong, and you have absolutely every right to seek cert, but what do you have for us today? Well, I think, Your Honor, as we noted in our brief, the fetal heartbeat law, the detection of a fetal heartbeat is significant medically, because if a fetal heartbeat is not detected by seven or eight weeks, there's a very strong chance that a miscarriage has or is occurring. So that's one significant point. So second, the detection of a fetal heartbeat is, research shows there's a 95 to 98% chance that the fetus will survive to term. So this law protects the very unborn lives that have a 95 to 98% chance of becoming full-term children unless that chance is extinguished. Now, we think that the district courts must consider the state's interest and the compelling nature, the strength of the state's interest in determining whether a state law is unconstitutional. That is why we think the undue burden test is the proper test for the courts to apply. That permits both sides to present their evidence to the district court, allows the district court to consider the benefits along with the burdens, as all the other cases since the district court. We think that that was an error for the district court not to do so. As I'm sure you know, I've made clear I think the district court, in my concurring opinion, I think the district court could have heard the evidence. I think the problem with your case is that there's nothing in the Supreme Court precedent that tells us that the district court had to accept that evidence. It's a matter of discretion. And Your Honor, we certainly agree with your separate opinion concerning the judgment right up until the point where you decided you had to rule against us on all points, but we think that the serious reservations you expressed in your opinion. You would have preferred to win. I understand. Sir? You would have preferred to win. I understand. Well, of course, Your Honor. I'm a lawyer. I would like to win. But the reservations that you expressed about the approach taken by the district court, we think were enough to show that it was an abuse of discretion not to at least consider the state's interest and how this law advances those interests. What's your best case for the proposition that the district court had no choice, that they had to accept the evidence even though the Supreme Court precedent would seem to require a particular result on the merits? Because as Judge Costin, you began with the fact that federal court striking down a state statute is a matter of immense significance. Before a federal court strikes down a state statute which advances legitimate state interest, we think federal courts must consider those interests. Even if the court ultimately rejects those matters, the state's evidence, refuses to consider it as evidence, nonetheless, we think the court should allow development of a record that reflects that. Otherwise, reviewing courts such as this court, ultimately the Supreme Court, are prevented from having a complete record. Well, in fairness, the Supreme Court, if it wanted to change its precedent, could then send back for further evidentiary hearings. Your Honor? I realize that's not your preference, but it's not as if the development of law is foreclosed in the event that the Supreme Court wants to develop a law in that respect. But Your Honor, I think that that is a very unusual event for the Supreme Court to actually remand for additional time. Why is that? The Supreme Court remands all the time for evidentiary developments. Well, not here where we're on a preliminary injunction record, Your Honor. I mean, often the court just says this is not a proper vehicle for cert, but we think that if the Supreme Court does intend for the district lower courts to apply a categorical test which prevents the states from ever presenting evidence of how the law advances the state's court needs to say that directly rather than by implication. Of course, this court has recognized in other abortion cases that the Supreme Court has accepted cert in June medical. That case certainly has issues that are pertinent here. You have the application of the undue burden test. The third-party standing issue, I think, surprised a lot of people when the Supreme Court accepted Louisiana's conditional cross-petition on that. That certainly is relevant to any abortion case, whereas here you only have abortion providers seeking to assert the rights of women. In the Texas dispositional fetal remains case, Your Honor, Judge Gossett, you said, you know, the whole playing field may change if the Supreme Court takes June medical. And as we saw, the Supreme Court not only took June medical. Right. We've held that case in abeyance because of the possibility of new Supreme Court guidance. Correct. Correct. And so one question, I guess, for this panel is whether the court is going to continue its recent practice of doing so, so as to respond to that. All right. Thank you, Mr. Barnes. We'll now hear from Ms. Schneller. Good morning, Your Honors. May it please the Court, Hillary Schneller for FLE's Jackson Women's Health Organization and Dr. Carr-Ellis. I may not, I'll try not to repeat much of what Mr. Barnes already covered, as the Court knows, just less than two months ago, this Court held Mississippi's ban on abortion after 15 weeks unconstitutional because it's a ban on abortion for viability. The Court then denied the state's request for a re-hearing on Bonk, and just last week and here today, the state has agreed that that decision controls the outcome of this court's preliminary injunction after approximately six weeks of pregnancy. Based on this circuit and Supreme Court precedent, we would ask the Court to affirm the district court's preliminary injunction. Just to, I guess, follow up on a couple of points that Mr. Barnes mentioned, and in response to your question, Judge Costa, about the difference between a 15-week ban and a ban based on detection at the embryonic or fetal cardiac activity, I mean, to the extent the state's argument is cardiac activity is a better standard than viability, that argument is foreclosed by Supreme Court precedent, which has drawn the line at viability, and the reason the line has been drawn at viability, as the Court explained in detail in Casey, is that in protecting the woman's autonomy interests, the Supreme Court drew the line at viability because that is the point at which the fetus has a reasonable likelihood of sustained survival, independent from the woman, survival that the state then could come in, presumably, and carry on. That is not true at all, at the point at which the fetus may have cardiac activity. Do you acknowledge that in looking at viability, courts need to take account of medical breakthroughs, so as time goes on and there's more medical advances, viability could become at an earlier stage of a woman's pregnancy? I mean, I think the viability standard itself acknowledges that medical science may advance in that context, so it draws the line at viability, which is, you know, I mean, has not moved in many decades, but acknowledges that potential fact. Viability is, what does the record show viability is normally, how many weeks of pregnancy? The record shows that viability is at the earliest, 23 weeks of pregnancy, and this law would ban abortion as early as six weeks of pregnancy, so as the state acknowledges, we are, this ban would take effect well before viability, and indeed well before many women even know they're pregnant. Does reaching, let me rephrase, does deciding this case require us to decide other issues? I know the en banc petition talks about sort of eugenics-type laws. Is that implicated in this decision that we're doing today, or is that just a separate issue? I don't think that's implicated at all here. This ban is a ban on abortion for cardiac activity. That was a ban on abortion after 15 weeks. The state has not asserted those interests that are at issue in other cases. So deciding today's case and deciding the previous case doesn't require us to weigh in on that threat at all? I don't believe so. And, I mean, just to reiterate, I think Mr. Barnes brought up the state's interests here, and, I mean, as the court acknowledged in the 15-week ban decision, the Supreme Court, and now circuit precedent forecloses that argument. Casey, the Supreme Court in Casey, did the weighing here and said that before viability, it is for the woman and not the state to weigh the various facts and interests at stake and make the alternate decision. So unless the panel has additional questions, we would ask the court to affirm based on circuit precedent and Supreme Court precedent. All right, thank you. Mr. Barnes? Thank you. Anything else? Very briefly. Your Honor, you asked me whether there was another case where the court had been required to consider the state's interest. I think not with regards to a gestational age act. However, the pre-term Cleveland case is particularly significant here because there the Sixth Circuit panel, considering Ohio's anti-discrimination law, refused to apply the undue burden test, applied the same type of categorical rule that the district court applied here. On December 13th, excuse me, the same day that the panel released its decision in JAHU 1, the Sixth Circuit decided to take that case on bond. And Judge Bachelder's dissent from the original panel decision is completely consistent with our argument here that the appropriate standard for considering pre-viability abortion restrictions, whether you term them a regulation or a ban. But that's not a ban because it doesn't ban all abortions pre-viability or pre-15 weeks or pre-detection of the fetal heartbeat. It just says you can't have an abortion if you're doing it with this motivation. But, Your Honor, that law would have the effect of banning a decision of a woman. Title VII of the Civil Rights Act doesn't ban employment. It bans discriminatory acts in employment. I understand, Your Honor. Why isn't that on the regulatory side of the House rather than a ban on employment or a ban on firing? I'm not sure how to answer your question, Your Honor. But we think that the issue here is laws that have the effect of serving as a ban are considered under the heavy burden test. Laws which are just considered a ban even are considered categorically unconstitutional. We think there's a difference there. We think it's important. So what is categorically unconstitutional, if anything, in your view in the abortion arena? Or does Casey apply to everything that the undue burden says? Well, Casey changed the game, to be sure. What if the state of Mississippi said no one will ever get an abortion in this state, period? That would be unconstitutional, Your Honor. That would be Sojourner Tee, I think. I'm sorry? That would be like the Sojourner Tee case where this circuit held that a law banning all abortions except rape. But would you have to apply an undue burden analysis to that? You would not to that law, Your Honor. No, that is a complete ban. And I think that's the point where you're talking about a ban. If you start having to add qualifying terms like near-complete ban or partial ban, then I think you're talking about something else. So what if it says no abortion shall be performed before two weeks? Do you apply undue burden, or is that categorically unconstitutional? Well, I don't see there would be any problem to apply an undue burden test in that. I don't see how a district court would have any difficulty applying an undue burden test in that. I would think it would be a fairly easy standard for any plaintiffs to reach. So that, again, applying the undue burden test is more fundamentally fair to both sides. That's why we think that is the appropriate standard. Again, we freely acknowledge this panel is limited in its decision here by the J01 decision. We respectfully disagree with that. I would like to suggest, however, that holding this case in abeyance after oral argument would be entirely consistent with this Court's approach in the other recent abortion cases, Texas Fetal Remains and dismemberment abortion cases. Thank you. Hold in abeyance for what issue, the third-party standing issue? Because other than that, I don't see how June Medical is going to implicate this. Well, June Medical is going to speak to how the undue burden test should be applied, how it should be considered. And certainly every word of every abortion case from the Supreme Court is going to be closely scrutinized. The standing issue is, I think, the most directly relevant to this case. I acknowledge that. And also, Your Honor, of course, again, we are going to ask for review of the 15-week law. So holding this case in abeyance pending the Supreme Court's resolution of that forthcoming interpretation would also be appropriate. But my understanding of the third-party standing argument in June Medical is, look, those regulations, the state says, were put in place to actually help women improve the conditions of these clinics. So how do we know that the clinic can represent the views of women on that issue? Whereas the Court has long said, if you're talking about a ban, women who are going to a clinic to get an abortion obviously have an interest aligned with the clinic in wanting to allow abortion. So I'm not even sure how the third-party standing, unless they completely did away with it, which is not my understanding of what the state of Louisiana's argument really is focused on. Well, I think that the Texas fetal remains case and dismemberment abortion cases are similarly not directly health and safety regulations, as you describe the Texas fetal dismemberment law. No, no, but the Texas fetal remains law, the argument there against third-party standing is maybe some women who want abortions, maybe some want – they have different views on how fetal remains should be disposed. Whereas here, I mean, the longstanding presumption by the Supreme Court is there is the identity of interest between a clinic and the women who are their customers in at least wanting access to abortions. Your Honor, I think however the Supreme Court resolves that issue and discusses the appropriate standard to be applied in determining third-party standing, it certainly could be applicable here. All right. We have your argument. The case is submitted. Call the last case of the day.